IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MIKE KASSABJI,

       Petitioner,

v.                                     CIV 09-0675 RB/CG

JAMES JANECKA, Warden, and
GARY K. KING, Attorney General
for the State of New Mexico,

       Respondents.

# ORDER TO SUBSTITUTE WARDEN AND PROPOSED FINDINGS & RECOMMENDED DISPOSITION

This matter is before the Court on Mike Kassabji's habeas petition under 28 U.S.C. § 2254, Respondents' original and supplemental answers, and the Record Proper. I recommend that the petition be dismissed on procedural default grounds. Initially, however, I note the Clerk should substitute James Janecka for Erasmo Bravo as warden.

## I.  Substitution Is Proper Under FED. R. CIV. P. 25(d)(1)

Rule 12 of the Rules Governing Section 2254 Cases In The United States District Courts provides that the Federal Rules of Civil Procedure can be applied to habeas

actions so long as the civil rules "are not inconsistent" with the habeas statutes or other habeas rules.[1]  The federal rules permit a court to automatically substitute the name of the warden of the facility where a habeas petitioner has been transferred.[2]  Respondents note that Petitioner is now incarcerated at the Lea County Correctional Facility, where James Janecka is warden.  *See Doc. 49* at 1, n. 1.  Accordingly, I will ask the Clerk to make the substitution.

## II.  Factual & Procedural Background

It was difficult to understand the background that led to this action, not only because Petitioner's filings tend to focus on tangential issues, but also because his documents refer to several different cases filed in different jurisdictions.  *See, e.g., Doc. 30* at 2-4.  Respondents' most recent supplementation with state records helps clarify the confusion.[3]  In addition to having carefully reviewed the entire state and federal

---

[1]  Rule 12, RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

[2]  *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.  The court may order substitution at any time, but the absence of such an order does not affect the substitution."); *see also* Rule 2(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."); *Waples v. Phelps,* 2008 WL 1743400, n.1 (D. Del. 2008) ("Waples was transferred from the Sussex Correctional Institution to the Delaware Correctional Center.  Therefore, the court has substituted Warden Perry Phelps for Warden Richard Kearney, an original respondent.  *See* Fed.R.Civ.P. 25(d)(1).").

[3]  *See Doc. 49* (and the materials constituting the "Record Proper" filed therewith).  Some parts of the state records contain two sets of Bates-stamp numbers.  I will cite the page numbers for set marked "RP."  Also, unless otherwise noted, any citations to "exhibits" are those attached to Respondents' original answer, Document 22.

records, I have also independently reviewed public court records.[4]

## A.  Controversies Concerning Petitioner's Animal Sales

I digress briefly to summarize the long history that culminated in this action.

Petitioner sold dogs, and this entrepreneurial activity has put him at odds with animal

control authorities in at least two states.  The State of New Mexico, Bernalillo County,

and the City of Albuquerque each has its own regulations for animals,[5] and Petitioner's

disagreements with New Mexico authorities began over a decade ago.  For example,

from 1997 through 2000, Albuquerque Animal Control charged him with misdemeanors

relating to sale of animals, number of animals, restraint of animals, displaying a "hobby

breeder permit," animal disturbance/offensive odors, and other such charges.[6]

---

[4]  After Petitioner filed his "reply" to the supplemental materials, presiding District Judge Brack placed Petitioner under limited filing restrictions.  However, Judge Brack also gave Petitioner permission to file another reply, if he wished.  *See Docs. 49, 52, 53.*  I have reviewed Petitioner's subsequent submissions, and they only address extraneous matters.  *See Docs. 54-58.*

[5]  New Mexico's animal cruelty statutes are codified at N.M. STAT. ANN. § 30-18-1. Albuquerque's ordinance is codified in the Albuquerque Code of Ordinances, Chapter 9, Article 2, §§ 9-2-1-1 through 9-2-8-1.  The current version of the ordinance – the October 2006 "Humane and Ethical Animals Rules and Treatment" or "HEART" ordinance – is maintained on a website – see www.cabq.gov/a-z#o "ordinances" link to www.amlegal.com/albuquerque_nm/. Bernalillo County's ordinance is codified in the Bernalillo County Code, Sections 6-30 through 6-77.  The current  version of the "Bernalillo County Animal Care Services Ordinance" is available online at www.bernco.gov/live/departments.asp?dept=2328&deptnews=199358.

[6]  The charges cited in these footnote are from Bernalillo County Metropolitan Court case dockets, which are available at www.metrocourt.state.nm.us/casemanagement/.  Some of the matters were appealed to the Second Judicial District Court in Albuquerque, and those docket sheets are available at www.nmcourts.gov/caselookup/.  Only the animal-specific charges are listed – additional charges failure to appear, contempt, probation violations, failure to pay fines, etc., are not noted.
  •MR389796 - two-count charge by Officer Baca for violations of 9-2-3-25B (animal sale on private property) and 9-2-3-1 (number of animals) occurring on 7/20/96; charges dismissed on request of District Attorney.
  •MR552797 - three-count charge by Officer Downs for violations of 9-2-2-3B (restraint of animal), 9-2-3-1 (number of animals), and 9-2-6 (permit) occurring on 9/7/97; after finding

In the twelve-month period between March 2001 and March 2002, the combined

charges by Albuquerque Animal Control and Bernalillo County Animal Control

numbered over one hundred.[7]  The number of charges decreased in 2004 and 2005 but

_____

of guilt and appeal (District Court #D-202-LR-9800002, sentenced to ninety days incarceration suspended, $200 fine, and conditions of "no more than 4 animals on property, no breeding w/o permit; no animals unrestrained in public."
•MR45898 - two-count charge by Officer Downs for violations of 9-2-2-6 (permit) and 9-2-3-1 occurring on 1/26/98; the bench trial was "adjourned after the state rested," to be resumed later "after other cases resolved," but eventually dismissed because of "no witness/victim."
•MR62898 - one-count charge by Officer Downs for violation of 9-2-2-6 (permit) occurring on 1/27/98; the matter was dismissed as "parties have resolve."
•MR60798 - one-count charge by Officer Downs for violation of 9-2-2-6 (permit) occurring on 2/2/98; directed verdict of "not guilty granted [because] no jurisdiction proved."
•MR391600 - one-count charge by Officer Garcia for violation of 9-2-3-7 (animal disturbance) occurring on 7/8/00; after finding of guilt and conclusion of appeal (District Court #D-202-LR-20000240), sentenced to "remove dogs."

   [7] Those cases are:
•MR134101 - four-count charge by Officer Corriz for violations of 9-2-2-3B (restraint of animal), 9-2-4-1 (permit), 9-2-3-25B (animal sale on private property), and 9-2-2-1A (rabies vaccination) occurring on 3/19/01; after finding of guilt and appeal (District Court #D-202-LR-200100098), , sentenced to ninety days incarceration suspended, placement on supervised probation, and conditions of successful completion of "pet owners responsibility schl, all dogs vaccinated and licensed and given shots."
•MR231501 - one-count charge by Officer Garcia for violation of 9-2-4-1 (permit) occurring on 5/1/01; after appeal (District Court #D-202-LR-200100109) Petitioner "found not guilty of all charges, state and [Petitioner] reached agreement on record.  Charges dism[issed] pursuant to agreement between parties although [Petitioner] didn't fully carry forth is part of bargain."
•MR231401 - one-count charge by Officer Garcia for violation of 9-2-3-1 (number of animals) occurring on 5/3/01; appears to have been appealed and resulted in finding of not guilty (see District Court #D-202-LR-200100113).
•MR480601 - one-hundred-twenty-one-count charge by Officer Markham for violations of 6-43A (licenses), 6-46A (rabies vaccinations), 6-58A (animal care and maintenance), 6-44 (number of animals), and 6-39 (animals on unenclosed premises) occurring on 8/9/01; after appeal and finding of guilt (District Court #D-2-2-LR-200100235), the District Attorney dismissed the bulk of the charges and "in lieu of" his sentence of $300 fine, Petitioner permitted to "complete comm[unity service] . . . as math and literacy tutor;" Court of Appeals affirmed conviction.  In September 2001, Petitioner initiated a *pro se* civil suit in state court against the City of Albuquerque, Albuquerque "Animal Services," and Officer Garcia for "denial of breeder permit."  After some five years of rulings on initial matters, the case was dismissed for lack of prosecution in August 2005.  *See* District Court #D-202-CV-200106183.
•MR613301 - one-count charge by Officer Garcia for violation of 9-2-3-1 (number of animals) occurring on 11/6/01; after appeal and finding of guilt (District Court #D-202-LR-

also marked the first civil actions Petitioner filed concerning animal control issues.[8]

By March 2006 Petitioner was incarcerated in Texas on animal cruelty charges, after the dogs he was transporting in his car were seized by animal control authorities in that state.  He filed a *pro se* civil rights suit in the Northern District of Texas, arguing that the dogs "were comfortable and content.  Dogs like to be together for comfort, they lie on each other for warmth and companion[ship] even if they had a large area, it is the nature of dogs. . . . Carry[ing] small dogs in carriers is a common practice by thousands

---

2002000014), sentenced to $300 fine and condition that "ALB animals services permit inspector may inspect [Petitioner's] residence [and] not deprive a resident . . . of a dog he had previously given her.  The DA's o[ffice] shall conduct an investigation of [Petitioner] for the crimes of perjury & intimidation of a wit[ness] in connection with this case."
•MR673901 - two-count charge by Officer Garcia for violation of 9-2-3-14A (care and maintenance) and 9-2-2-6 (permit) occurring on 12/7/01; after appeal and finding of guilt (District Court #D-202-LR-2002200037), sentenced to ninety days incarceration suspended and $300 fine.
•MR130402 - one-count charge by Officer Garcia for violation of 9-2-3-14A (care and maintenance) occurring on 3/5/2002; dismissed at request of the officer/district attorney.

   [8]  Those cases are:
•MR50204 - one-count charge by Officer Garcia for violation of 9-2-2-5F (license) occurring on 2/21/04, which was dismissed.
•MR50304 - one-count charge by Officer Garcia for violation of 9-2-2-6 (permit) occurring on 2/21/04, which was dismissed.
•MR18705 - two-count charge by Officer Garcia for violations of 9-2-4-1 (permit) and 9-2-3-1 (number of animals) occurring on 12/29/04; after appeal and finding of guilt (District Court #D-202-LR-200500029), sentenced to ninety days incarceration suspended and $300 fine.
•MR27705 - three-count charge by Officer Goddard for violations of 9-2-3-21 (keeping sick/diseased animals), 9-2-3-25B (animal sale on private property), and 9-2-4-1 (permit) occurring 1/14/05; after appeal and finding of guilt (District Court # D-202-LR-200500066), sentenced to one hundred eighty days incarceration and $750 fine.
•MR365405 - three-count charge by Officer Tinney for violations of 9-2-2-1A (rabies vaccination), 9-2-4-1 (permit), and 9-2-3-25B (animal sale on private property) occurring on 7/17/2005, which was delayed for a year while counsel withdrew and trials were reset, and does not appear to ever have been brought to trial.  In October 2005, Petitioner attempted to initiate a *pro se* suit class action suit on behalf of himself and "the people of the State of New Mexico" against Albuquerque Animal Control alleging a violation of their civil rights because their animals had been seized.  *See Public of the State of New Mexico v. The State of New Mexico Animal Control,* CIV 05-1125 RB/LFG (Doc. 1).  The case was dismissed at the *in forma pauperis* review stage for failure to state a cognizable claim.  *See id.* (Doc. 4).

and thousands of people." *Kassabji v. Officer Curtice Spencer, Armstrong County, State of Texas,* 2:06-cv-00060-J-BB (Doc. 1 at 1) (available though PACER). Petitioner's last filing in the Texas civil rights action was May 2006, and thereafter his suit was dismissed for failure to prosecute. *See id.* (Docs. 13-19).[9]  He had returned to New Mexico.

In late July 2006, Officer Baca of Albuquerque Animal Control seized thirteen dogs from Petitioner's home and the Albuquerque Police Department arrested Petitioner for failing to comply with Officer Baca's order.  Those events gave rise to three suits, all filed within days of each other:  Officer Baca's fifty-five count criminal charge in Bernalillo County Metropolitan Court for the animal-related charges was assigned case number "CR1732806;"  Officer Brachle's criminal charge in Bernalillo County Metropolitan Court for resisting was assigned case number "CR1663906;" and Petitioner filed a *pro se* civil rights complaint with this Court concerning the seizure of his animals.  It took about a year for each of the three actions to conclude.[10]

Meanwhile, on December 12, 2006, Officer Espinosa of the now-called Albuquerque Animal Services seized twenty-one dogs from Petitioner's van.  The officer's criminal complaint provides in pertinent part:

On December 11, 2006 [Albuquerque Animal Services] was working with

---

[9]  His also filed a federal habeas suit in the Northern District of Texas, and this action was dismissed in early May 2006 for not paying the filing fee.  The court's dismissal orders in the habeas case were returned undeliverable within a few days.  *See Kassabji v. Officer Curtice Spencer,* 2:06-cv-00069-J (Docs. 1, 6-10).

[10]  The federal civil suit was concluded first and was dismissed on various grounds, including prosecutorial immunity, prematurity of the federal claims, the *Rooker-Feldman* doctrine, and declination of supplemental jurisdiction.  *See Kassabji v. Earl Baca, et al.,* CIV 06-710 WJ/ACT (Doc. 63, filed 6/18/07).

> RCI investigations and the City Attorney's Office in conducting and
> investigation of puppy sales by the [Petitioner who] deals in small breeds,
> like Maltese, Shi[] Zu's, Chihuahuas, and other toy breeds. . . .  I
> recognized the van according to the description. . . .  As we approached
> the van I could hear dogs barking inside. . . .  We asked Kassabji if [he]
> had any dogs [and] he stated no, we asked him if he owned the . . . van
> and he stated yes, I advised him that we heard dogs barking inside the
> van.  We advised Kassabji that he was ordered by the District Court not to
> own or harbor any animals; he stated that he purchased the dogs from
> Oklahoma and was going to sell them in Ruidoso and Arizona.  Kassabji
> agreed and gave us consent to look at his dogs, when he opened the
> sliding door to his van I could immediately smell the urine and feces
> coming from several dogs inside the van.  He started to show us only one
> dog at a time, we asked him if he had anything to hide and he stated no.
> We witnessed several dogs stuffed in cages and wire crates.  All of the
> dogs were barking and fighting with each other because they were stuffed
> into a carrier that was only designed for one dog.  We witnessed in one
> carrier that is 12" by 18" a total of 6 dogs stuffed in the carrier.  There was
> a total of two plastic carriers and two wire cages and a total of 21 dogs.
> We saw that none of the dogs had food or water inside the cages.  We
> saw that he had too many dogs past the limit of 4 companion dogs; we
> saw that some of the dogs had feces on their fur coats, and some of the
> dogs were soaked in urine.   These dogs appeared to be dehydrated and
> were panting.   We decide[d] to seize the dogs because of the several
> violations that were present at the time.  We impounded all of the dogs at
> the Animal Service division east side facility, and all of the dogs were
> examined by a licensed vet.  It was determined that 18 of the 21 toy breed
> dogs had ear infections and ear mites.

*Record Proper* at 21.  The one-hundred-twenty-count criminal charge that resulted from

the van seizure was assigned Bernalillo County Metropolitan Court case number

"CR2695406."  The charges were based on the state statute and Albuquerque

ordinance and specifically cited:  animal cruelty for each of the twenty-one dogs; lack of

food for each dog; restraint for each dog, lack of rabies vaccinations for each dog; an

"animal limit" count for each dog over the permissible limit; charges for lack of medical

treatment for each of the eighteen dogs with ear mites; and one count of sale of

animals.

Collectively, the 2006 seizures prompted Petitioner to file a flurry of suits, principally here and in Colorado, seeking a mix of civil, habeas, and extraordinary relief. At one point or another in these actions, Petitioner complained about the Texas and New Mexico seizures.  None of these suits were addressed on the merits.[11]  In the present action, Petitioner also complains about all of the seizures, but his habeas challenge is confined to the conviction and sentence stemming from the van seizure – that is, "CR2695406," where Bernalillo County Metropolitan Court Judge Julie Altwies presided and where Petitioner was represented by counsel.  *See, e.g., Record Proper* at 2, 430; *Doc. 1* at 5.

## B.  New Mexico Procedures

New Mexico "metropolitan courts" have the same jurisdiction as "provided by law for magistrate courts," as well as "jurisdiction within the county boundaries over all . . . offenses and complaints pursuant to ordinances of the county and of a municipality located within the county."  N.M. STAT. ANN. § 34-8A-3 (A)(1) (1977); *see also id.,* §§ 35-3-3 (A), (C) (2), (6) (magistrate courts "have jurisdiction in civil actions in which the

---

[11]   The Colorado suit was dismissed at the outset for failure to cure and Petitioner was subsequently put on filing restrictions.  *See Kassabji v. The State of New Mexico and The State of Texas,* 1:07-cv-1859-ZLW (Docs. 10, 17).  The two habeas actions Petitioner filed with this Court did not reach the merits because of his failure to exhaust.  *See Kassabji v. Baca,* CIV 06-1240 JCH/LCS (Docs. 34, 45-48); *Kassabji v. The State of New Mexico, Texas,* CIV 08-914 WJ/ACT (Doc. 5).  The civil suit he filed here was dismissed before the state criminal proceedings concluded in Bernalillo County Metropolitan Court.  *See supra* note 10.  Evidently, he has attempted to file matters with the Supreme Court of the United States.  *See, e.g. Record Proper* at 153, 449-69 (documents captioned "In The United States Supreme Court" that may or may not have been sent to the Supreme Court); *, Kassabji v. The State of New Mexico, Texas,* CIV 08-914 WJ/ACT (Doc. 5) ("Petitioner alleges that he filed his Sixth Petition for Writ of Habeas Corpus in the Supreme Court of the United States, and a copy that he sent to this Court was filed by mistake."); *Doc. 1* at 2 ("not yet by US-Sup. Court . . .so far, Chief [Justice] John Roberts is avoiding me.").

debt or sum claimed does not exceed ten thousand dollars ($10,000), exclusive of interest and costs" but "no jurisdiction in a civil action . . . against public officers for misconduct in office . . . to grant writs of injunction, habeas corpus or extraordinary writs"); *Martinez v. Sedillo,* 137 N.M. 103, 104, 107 P.3d 543, 544 (N.M. App. 2005) ("The legislature expressly granted the metropolitan court the jurisdiction of magistrate courts, as well as jurisdiction over other matters").

The metropolitan courts allow for trial by six-member juries in criminal matters, depending on the potential sentence.  N.M. STAT. ANN. §§ 34-8A-5 (A), (D).  If the penalty "does not exceed ninety days' imprisonment or if the penalty is a fine or forfeiture of a license, the action shall be tried by the judge without a jury."  *Id.,* § 34-8A-5 (B)(1).  And if the penalty "exceeds ninety days' but does not exceed six months' imprisonment, either party to the action may demand a trial by jury."  *Id.,* § 34-8A-5 (B)(2).  But if the penalty "exceeds six months' imprisonment, the case ***shall be tried by jury unless*** the defendant waives a jury trial with the approval of the court and the consent of the state."  *Id.,* § 34-8A-5 (B)(3) (emphasis added).  For the purposes of state law, in New Mexico, it is the potential aggregate sentence for all of the charges that determines whether a jury trial is required, not the maximum sentence for each individual charge.  *See, e.g., State v. Sanchez,* 109 N.M. 428, 430, 786 P.2d 42, 44 (N.M. 1990).

A New Mexico metropolitan court is not a "court of record" for every type of case within its jurisdiction, however, and this fact has consequences for appeal procedures. Specifically,

The metropolitan court is ***not a court of record for criminal actions***

*other than driving while under the influence* of intoxicating liquors or drugs *or domestic violence actions.*  Any party aggrieved by a judgment rendered by the metropolitan court in a criminal action, other than driving while under the influence of intoxicating liquors or drugs or domestic violence action, may appeal to the district court of the county in which the metropolitan court is located within fifteen days after the judgment was rendered.  The appeal shall be *de novo.*

N.M. STAT. ANN. § 34-8A-6(D) (emphasis added).  As a consequence, and as provided

by the New Mexico Rules, the metropolitan courts are only required to tape some

proceedings, only required to preserve certain items and, even if the court is initially

required to memorialize or preserve something, it is permitted to dispose of those items

relatively quickly.[12]

---

[12]   For example, while preliminary hearings in criminal matters are required to be recorded, criminal trials are not recorded unless they qualify as "on record" proceedings. *Compare* NEW MEXICO RULE 7-202 (B) ("A record shall be made of the preliminary examination. If the defendant is bound over for trial in the district court, the record shall be filed with the clerk of the district court with the bind-over order."), *with id.,* 7-705 (A) ("A tape recording and index log shall be made of all criminal proceedings in which the metropolitan court is a court of record. When an appeal on the record is specifically permitted by law, the tape recording and index log shall be a part of the record on appeal.").

In some instances, an individual may record metropolitan court proceedings for later use, but those limited circumstances not applicable here.  *See id.,* 7-601(D) ("With prior approval of the judge, a party in a metropolitan court proceeding or any person with a claim arising out of the same transaction or occurrence giving rise to the metropolitan court proceeding, may at the party's or person's expense, make a record of the testimony in the metropolitan court proceeding.  Any person causing a transcription of testimony to be made pursuant to this rule shall make a copy of the transcription available to all parties in the metropolitan court proceeding.").

Exhibits and other records can be disposed of by the metropolitan court within six months.  *See id.,* 7-202(B) (preliminary hearing tapes "may be disposed of by the metropolitan court after the expiration of six (6) months following the preliminary hearing"); *id.,* 7-112 (trial exhibits are preserved either by metropolitan court or parties if ordered by the court and [u]nless otherwise ordered by the court, all exhibits delivered to the clerk shall be disposed of by the court unless claimed by the attorney or party tendering the exhibit within ninety (90) days after final disposition of the proceedings, including any appeal."); *id.,* 7-705(C) ("Tapes containing the transcript of the proceedings shall be preserved for ninety (90) days after the entry of a final order in the proceedings.  Any party desiring to preserve the tapes for a longer period of time may, prior to the expiration of eighty (80) days after the filing of the final order, file a request to preserve the tapes containing the transcript of the proceedings.").

Appeals from metropolitan courts are taken to the district court and, for "*de novo*" appeals such as the crimes in Petitioner's case, the defendant is responsible for timely securing a new trial in the district court.[13]  An appeal from the district court then is taken "to the New Mexico Supreme Court or New Mexico Court of Appeals, as authorized by law, in accordance with the Rules of Appellate Procedure."  NEW MEXICO RULE 7-703(R).

In the van seizure case, the jury convicted Petitioner on 111 counts after a two-day trial.  *See Record Proper* at 2-3 (Judgment & Sentence entered 10/12/07), 150-60 (jury

---

[13]  *See id.,* 7-702(A)(1) ("At the time of entering a judgment and sentence, the court shall advise the defendant of the defendant's right . . . if the appeal is an appeal *de novo*, to a new trial in the district court"); *id.,* 7-702(B) ("In trial *de novo* appeals, the defendant has the duty of obtaining a trial before the district court within six (6) months of the date of the filing of the notice of appeal in the district court.  A defendant shall request a trial date at the time the notice of appeal is filed in the district court."); *id.,* 7-702(C) ("An appeal *de novo* which has not been tried by the district court within six (6) months after the date of the filing of the notice of appeal, will be dismissed and the judgment and sentence will be affirmed, unless the time has been extended by a justice of the New Mexico Supreme Court upon a showing of good cause."); *id.,* 7-703(A) ("A party who is aggrieved by the judgment or final order in a criminal action may appeal, as permitted by law, to the district court of the county within which the metropolitan court is located."); *id.,* 7-703(J) ("Except as otherwise provided by law for appeals involving driving while under the influence and domestic violence offenses, trials upon appeals from the metropolitan court to the district court shall be *de novo*.); *id.,* 7-703(L) ("The district court shall try a trial *de novo* appeal within six (6) months after the filing of the notice of appeal.  Any de novo appeal pending in the district court six (6) months after the filing of the notice of appeal without disposition may be dismissed and the cause remanded to the metropolitan court for enforcement of its judgment, or the court may consider other sanctions as appropriate."); *id.,* 7-703(M) ("The [six-month] time limit specified in Paragraph L of this rule may be extended one time for a period not exceeding ninety (90) days upon a showing of good cause to a justice of the Supreme Court.  The party seeking an extension of time shall file with the clerk of the Supreme Court a verified petition for extension concisely stating the facts petitioner deems to constitute good cause to extend the time period for trial. The petition shall be filed within the six (6) month period, except that it may be filed within ten (10) days after the expiration of the six (6) month period if it is based on exceptional circumstances beyond the control of the party or trial court which justify the failure to file the petition within the six (6) month period. . . .  If the Supreme Court finds that there is good cause for the granting of an extension beyond the six (6) month period, it shall fix the time limit within which the defendant must be tried. No other extension of time shall be allowed.").

verdict forms), 384-402 (jury instructions).  Almost half of his total term of incarceration

and $20,000 of his fines were suspended, and Judge Altwies gave him an eleven-year

sentence and a $1,000 fine, to be followed by a two-year term of supervised probation

during which he many not have any animals.  *Id.* at 3-4.

Petitioner's trial attorney, Jonathan Miller, filed a timely notice of appeal to the

Second Judicial District Court, which assigned the case number "D-202-LR-

200700169."  *See, e.g., Record Proper* at 1 (notice of appeal filed 10/15/07), 11-12

(metropolitan clerk certificate of record for appeal), 429 (Judge Altwies' order allowing

Public Defender to withdraw and that Mr. Miller was appointed in June 2007); *see also*

attached docket sheet for D-202-LR-200700169 [hereinafter "*Second Judicial District*

*Docket*"].  Within four weeks thereafter, Mr. Miller filed a motion to withdraw, and the

district court allowed him to do so after replacing him as counsel with the Public

Defender.  *Record Proper* at 482-83; *see also Second Judicial District Docket* (entries

dated 10/15/07, 11/15/07, and 11/16/07).  After months went by without action or

appearance by the Public Defender or any other counseled or *pro se* filings by the

defense, the State filed a motion to dismiss under New Mexico Rule 7-702(B) and (C),

for Petitioner's failure to conduct a trial *de novo* within six months.  *Record Proper* at

484.

The district court transported Petitioner for a hearing, and a public defender

appeared with him "for purposes of arraignment only."  *Id.* at 491.  The proceedings are

not recorded or otherwise memorialized save for District Judge Charles W. Brown's

June 18, 2008 order after the hearing.  He gave Petitioner one week to find a private

attorney and, if he did not, to "immediately apply to the public defender's office for legal

representation, and if not found eligible, . . . [to] comply with the public defender's

appeal procedure, and sign a reimbursement contract for the public defender

representation." *Id.*

Following Judge Brown's order, no attorney from the Public Defender made an

appearance of record, but a "John McCall Defense Counsel" is listed and copied on

subsequent documents.  It appears that Mr. McCall attended the hearing Judge Brown

held on July 1, 2008 on the State's motion to dismiss.  For example, the *pro se*

pleadings Petitioner filed after this hearing are copied to John McCall and contain a

notation that reads "pursuant to Judge Brown's order accept for filing standby counsel

/s/ . . . 7-1-08" and bear a signature that appears to read "John McCall."  *See id.* at 493-

501; *see also Second Judicial District Docket* (entries dated 6/18/08 through 7/8/08).

Also, Judge Brown's July 8, 2008 order granting the State's motion to dismiss indicates

that John McCall "approved as to form by fax."  *See Record Proper* at 501; *Second

Judicial District Docket* (entries dated 7/01/08 through 7/8/08).

Though the details of what transpired at Judge Brown's hearings are not part of

the record, his last two orders suggest that Petitioner would not allow the Public

Defender or anyone else to represent him.  This is consistent with the position Petitioner

has taken in the state district court and here.  His *pro se* filings in the state district court

indicate that he disavowed any further state proceedings and did not want to participate

in them at all.  For example, in a motion requesting a change of venue, he stated that he

"did not file this appeal: LR2007-00169.  Mayor Chavez/City Attorney Wheeler/White/

DA Brandenburg Greenlee filed it . . . it is an attempt to put on, yet, another show,

mock-trial, and no one would get fooled with this upcoming attraction.  I am not

interested in this trial here in NM, again; I ask for a "change of venue."  *Record Proper*

at 493 (emphasis original); *see also e.g., infra, Section III.B* (and discussion and

citations therein).  His federal petition states "I don't acknowledge any attorney public

defender appointed by Judge Altwies - Judith Nakomura - Mayor Martin Chavez."  *Doc.*

*1* at 6.  Furthermore, there is no record that Petitioner pursued an appeal after Judge

Brown's dismissal.  *See Doc. 49* at 3-7.  Instead, he mailed his federal petition to this

Court almost a year after the date of Judge Brown's final order.  *See Doc. 1* at 6, 8

(certification and envelope showing mailing on 7/2/09).

## *C.  Federal Claims*

Petitioner's overarching contention is that he is actually innocent of any

wrongdoing – that it is not a crime to sell animals and that he has been persecuted at

every turn of every legal proceeding filed against him or by him.  He specifically asserts

that he is innocent either because the charges were based on the "hearsay" testimony

of officers or because the presence of mites in dogs' ears is not a crime.  *See, e.g.,*

*Doc. 1* at 2 (the charges are ""all bogus" – based on "hearsay, a bunch of shenanigans"

– There is no such thing as a 'crime for 'earmites'"); *id.* at 5 ("And if there was 'earmites'

it would be a ridiculous claim.  There is no crime to speak of here.");  *id.* at 6 ("I am

falsely imprisoned . . . a victim of a crime by [Albuquerque] Mayor . . . and his

associates Judge . . . Altwies.").

His federal petition raises five claims:

- Two assert that because Judge Altwies is a "misdemeanor judge" and
  because he was charged with "misdemeanor" crimes, she had no
  jurisdiction to sentence him to more than "90 days."  *See Doc. 1* at 5
  ("Ground Two:   A metro court judge – a misdemeanor judge - is not
  entitled to sentenced me, or anyone, to ten years in prison - on

misdemeanor charge!  Her jurisdiction/authority is 90 days, if that on petty misdemeanor: 'earmites' in my dog's ear!"); *see also id.* ("Ground Five:  The Whole concoction of charges in my J&S do not amount to even minute petty misdemeanor, and Judge Altwies gave me ten years.").

- Two challenge how Judge Altwies conducted the trial proceedings. *See id.* ("Ground One:  I asked for a 'change of venue,' beforehand, due to prejudice.  Judge Altwies ignored me."); *see also id.* ("Ground Three:  Judge Julie Altwies installed a 'bogus' jury.  I didn't get to select any of those six crooks.").

- The final claim either is another challenge to the trial proceedings or a sufficiency of the evidence claim.  *See id.* ("Ground four:   Judge Altwies suppressed all my 12 witnesses.  Instead she relied on hearsay testimonies of:  Romero, Marquez.  And they didn't say anything about earmites!.").

These arguments were not raised in the one-page *pro se* document entitled "petition for writ of habeas corpus" that he filed with the state district court, *see Record Proper* at 495, but the substance of all of them was contained his *pro se* motion to "change venue," *see id.* at 494.

# III.  Analysis

## A.  Exhaustion & Procedural Default Principles

Because Petitioner filed this action after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), it applies to this case.  *E.g., Abdul-Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008).  AEDPA, however, did not change long-standing basic federal habeas principles that govern the resolution here.  Foremost is the exhaustion requirement.  A federal court cannot grant habeas relief unless a state prisoner fully exhausts his state court remedies.  That means not only presenting he claims to one court, but also to the

state's highest court where review is available.  *E.g., O'Sullivan v. Boerckel,* 526 U.S.

838, 842, 845 (1999).  Though there is a pragmatic aspect, the principal basis for

requiring exhaustion is comity:

> It has been settled for nearly a century that a state prisoner must normally
> exhaust available state remedies before a writ of habeas corpus can be
> granted by the federal courts. . . .  The exhaustion requirement, now codified
> in the federal habeas statute, 28 U.S.C. §§ 2254(b) and (c), serves to
> minimize friction between our federal and state systems of justice by allowing
> the State an initial opportunity to pass upon and correct alleged violations of
> prisoners' federal rights. . . .  An exception is made only if there is no
> opportunity to obtain redress in state court or if the corrective process is so
> clearly deficient as to render futile any effort to obtain relief. . . .
>
>      . . .  it would be unseemly in our dual system of government for the
> federal courts to upset a state-court conviction without affording to the state
> courts the opportunity to correct a constitutional violation.

*Duckworth v. Serano,* 454 U.S. 1, 19-20 (1981) (citations omitted).  The State can waive

the exhaustion requirement, but that is not the case here, since Respondents raised

failure to exhaust in their Answers.  *See Doc. 22* at 7; *Doc. 49* at 5-7.[14]

     If, as here, habeas claims are unexhausted, ordinarily a federal court should

---

[14]  *See also, e.g.,* District Attorney's Office for Third Judicial  District Attorney's Office for
Third Judicial Dist. v. Osborne, ___ U.S. ___,  129 S. Ct. 2308, 2324 (2009) (Alito, J.,
concurring) ("We have long recognized the principles of federalism and comity at stake when
state prisoners attempt to use the federal courts to attack their final convictions. . . . Congress
subsequently codified [the] exhaustion requirement in [AEDPA]"); *Castille v. Peoples,* 489 U.S.
346, 349 (1989) ("The exhaustion requirement . . . is grounded in principles of comity . . .  In
addition, the requirement is based upon a pragmatic recognition that federal claims that have
been fully exhausted in state courts will more often be accompanied by a complete factual
record to aid the federal courts in their review."); *Banks v. Dretke,* 540 U.S. 668, 705 (2004)
("We note . . . while AEDPA forbids a finding that exhaustion has been waived unless the State
expressly waives the requirement,  28 U.S.C. § 2254(b)(3), under pre-AEDPA law, exhaustion
and procedural default defenses could be waived based on the State's litigation conduct.")
(citing *Gray v. Netherland,* 518 U.S. 152, 166 , 116 (1996) (State waiver of procedural default)
and *Granberry v. Greer,* 481 U.S. 129, 135 (1987) (State waiver of exhaustion)); 28 U.S.C. §
2254(b)-(c) (exhaustion requirement, exceptions, waiver, denial on merits permissible
notwithstanding lack of exhaustion).

dismiss the unexhausted claims without prejudice and allow the petitioner to pursue available state-court remedies.  However, if the state court where petitioner is to present the claims would not entertain them, exhaustion no longer is an issue – the question for the federal habeas court becomes whether a "procedural default" has occurred.[15] When there is a procedural default, the federal court does not address the claims unless Petitioner meets his burden of showing "cause and prejudice" or a "fundamental miscarriage of justice."  *E.g., Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Two different New Mexico procedural rules are at issue here, depending on how Judge Brown's dismissal is characterized.  As I see it, the step Petitioner failed to pursue from Judge Brown's final order was his direct appeal "to the New Mexico Supreme Court or New Mexico Court of Appeals, as authorized by law, in accordance with the Rules of Appellate Procedure."  NEW MEXICO RULE 7-703(R).  Indeed, Judge Brown's order specifically directed that the action not be remanded "to the Metropolitan Court for the imposition of the original judgment and sentence" for thirty days, the time for "appeal."  *Record Proper* at 501.  Though I disagree with Respondents'

---

[15]  *See Bland v. Sirmons,* 459 F.3d 999, 1012 (10th Cir. 2006) (citing *Demarest v. Price,* 130 F.3d 922, 939 (10th Cir.1997) and quoting *Dulin v. Cook,* 957 F.2d 758, 759 (10th Cir. 1992)), *cert. denied,* 550 U.S. 912 (2007); *see also e.g., Bethurum v. Zavaras,* 2009 WL 3601242 n. 1 (10th Cir. 2009) (quoting *Coleman,* 501 U.S. at 732 where it states:  "A habeas petitioner who has de-faulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); quoting *Castille v. Peoples,* 489 U.S. 346, 351 (1989) were it states:  "exhaustion may . . . exist, of course, if it is clear that [the] claims are now procedurally barred under [state] law"); and quoting *Parkhurst v. Shillinger,* 128 F.3d 1366, 1370 (10th Cir. 1997) where it states:  "[w]hile petitioner has not exhausted his state remedies because his claim was not fairly presented to the Wyoming courts, petitioner's claim is exhausted in reality because it is clear that his claim is now procedurally barred under Wyoming law").

characterization,[16] Petitioner's claims are procedurally-defaulted under either view.

In New Mexico, there is no statute of limitations that would preclude Petitioner from pursuing state postconviction relief, even at this late date.  *See State v. Sutphin,* 142 N.M. 191, 195, 164 P.3d 72, 76 (N.M. 2007) ("We expressly join those jurisdictions that have declined to apply laches to habeas proceedings. We too believe that it would be fundamentally unjust to deny a valid habeas petition merely because of the passage of time.").  But the circumstances of this case implicate another New Mexico procedural rule concerning state postconviction remedies – the rule announced by the New Mexico Supreme Court in *Gillihan* and reaffirmed by it in *Duncan.  See State v. Gillihan,* 86 N.M. 439, 440, 524 P.2d 1335, 1336 (N.M. 1974); *see also Duncan v. Kerby,* 115 N.M. 344, 346, 851 P.2d 466, 468 (N.M. 1993).  "The procedural default doctrine and its attendant 'cause and prejudice' standard are grounded in concerns of comity and federalism . . . and apply . . . whether the default in question occurred at trial, on appeal, **or on state collateral attack.**  *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000) (emphasis added) (internal quotations and citations to *Coleman,* 501 U.S. at 730 and to *Murray v. Carrier,* 477 U.S. 478, 490-492 (1986) omitted).

---

[16] Respondents' view is that Judge Brown **denied** Petitioner's *pro se* state habeas petition with his final order that dismissed the appeal, and thereafter Petitioner procedurally defaulted by failing to seek certiorari in the New Mexico Supreme Court within 30 days as required by New Mexico Rules 5-802 and 12-501.  *See, e.g., Doc. 49* at 4.  Their argument thus contends that Judge Brown denied state habeas relief either on the merits or for some procedural reason.  Nothing in the record before me, however, shows that Judge Brown acknowledged or entertained the relief Petitioner sought in his *pro se* pleadings.  He specifically dismissed the appeal based on the State's argument that Petitioner had not timely sought a new trial and mentioned nothing about the pending *pro se* motions either in his final order or in any other docket entry.  *See Record Proper* at 501; *Second Judicial District Docket.*  Respondents have not cited a New Mexico rule that would deem Judge Brown's failure to address a motion as a "denial."  The effect of Judge Brown's final order on the pending *pro se* request for state habeas relief, if any, would seem to be to moot what was a premature state habeas filing.

## B.  Application To Petitioner's Federal Claims

Petitioner's federal claims are based on the jurisdiction of the trial judge, the way

she conducted the proceedings, and the legal sufficiency of his conviction, and they

would have become moot had he secured a new trial in district court.  He also could

have presented the claims to the New Mexico Court of Appeals and New Mexico

Supreme Court had he completed a direct appeal.  Under the *Gillihan/Duncan* rule,

"New Mexico postconviction procedures are not a substitute for direct appeal and . . .

our statutes do not require collateral review of issues when the facts submitted were

known or available to the petitioner at the time of his trial."  *Duncan,* 115 N.M. at 346,

851 P.2d at 468 (citing *Gillihan*).  The Tenth Circuit has long held the rule "adequate" for

procedural default purposes.  "[Petitioner] failed to raise . . . his . . . claims in his direct

appeal.  Under New Mexico law, [he] is deemed to have waived these claims by failing

to raise them on direct appeal.  *Duncan* . . .  This Court has previously held that New

Mexico's procedural bar at issue here is an independent and adequate state procedural

ground.  *Scott v. Romero,* 153 Fed. App'x 495, 497 (10th Cir. 2005) (citing *Jackson v.*

*Shanks,* 143 F.3d 1313, 1318 (10th Cir.), *cert. denied,* 525 U.S. 950 (1998)).

Furthermore, the limited exceptions to the *Gillihan/Duncan* rule are neither applicable

here, nor would render the rule "inadequate."  *See, e.g., Duncan,* 115 N.M. at 346, 851

P.2d at 468 (exceptions); *Jackson,* 143 F.3d at 1318 (exceptions do not render rule

"inadequate").[17]  In my view, then, "[t]here is no question that [New Mexico courts] would

---

[17]  Because his claims do not relate to the trial itself, the lack of a recording of those
proceedings would not have precluded review.  *C.f., Campos v. Bravo,* 141 N.M. 801, 803-04,
161 P.3d 846, 848-49 (N.M. 2007) ("When the State asserts that a habeas petitioner's claim is
barred because the same claim was already addressed on appeal, but was denied, the habeas

deem [Petitioner's] claim[s] . . . procedurally barred." *Bland v. Sirmons,* 459 F.3d 999,

1012 (10th Cir. 2006), *cert. denied,* 550 U.S. 912 (2007).

It is clear from the record that Petitioner deliberately chose not to pursue available

state relief because he believes that would be "futile."  His serial motions for change of

venue in this and all of his other cases underscore that conclusion.  *See e.g., Docs. 30,*

*37, 41, 44, 53; supra,* note 11; *see also, e.g., Doc. 24* at 2 ("The gist of the matter is:  I

had turned in a request for 'change of venue," pre-emptorily in all my trials (cases) –

whether I am the defendant or the plaintiff – to out of the state of NM, due to the obvious

prejudice.  Therefore it was – and still is – futile to pursue appeals, or petitions for writ of

habeas courts, in NM courts.").  His decision to avoid the state courts would have

constituted a forfeiture of the federal claims even under the former "deliberate bypass"

standard.[18]  Furthermore, neither the Supreme Court nor the Tenth Circuit would find

that his rationale for bypassing the state courts excuses his failure to exhaust on the

_____

claim is not barred if it 'is grounded in facts beyond the record previously presented on appeal,
and if the additional facts are those which  could not, or customarily would not, be developed in
a trial on criminal charges.'  *Duncan* . . .  When the State asserts that a habeas petitioner's
claim is barred because the petitioner failed to raise the issue on appeal, a different rule applies.
'A habeas corpus petitioner will not be precluded ... from raising issues . . . that could have been
raised on direct appeal either when fundamental error has occurred, or when an adequate
record to address the claim properly was not available on direct appeal.'  *Id.*").

[18]   *See e.g., Wainwright v. Sykes,* 433 U.S. 72, 83 (1977) (" knowing and actual " 'an
intentional relinquishment or abandonment of a known right or privilege.") (internal quotations
and citations omitted); *Fay v. Noia,* 372 U.S. 391, 438 (1963) ("habeas corpus has traditionally
been regarded as governed by equitable principles. . . .  Among them is the principle that a
suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. . . .
the federal habeas judge may in his discretion deny relief to an applicant who has deliberately
bypassed the orderly procedure of the state courts and in so doing has forfeited his state court
remedies.").

"futility" grounds he asserts,[19] or constitutes "cause" for his procedural default.[20]  Where

a petitioner "has failed to show cause, no discussion of whether he has demonstrated

'actual prejudice' is necessary because both are required to satisfy the first exception to

---

[19]  As defined by the habeas statute, available state remedies are not "futile," unless they are nonexistent or "ineffective to protect the rights of the applicant," neither of which are applicable here.  28 U.S.C. § 2254(b)(1)(B)(i)-(ii).  As illustrated by caselaw, futility is not based on a petitioner's subjective belief about whether the state courts would grant relief.  *See, e.g., Clonce v. Presley,* 640 F.2d 271, 273 (10th Cir. 1981) ("will not excuse a failure to exhaust state remedies unless it is affirmatively shown that resort to them would be useless.  *Lewis v. New Mexico,* 423 F.2d 1048 (10th Cir. 1970).");  *Burnett v. Hargett,* 1998 WL 88153 at * 6 (10th Cir. 1998) ("The futility rule in *Wallace* and *Goodwin* was applied in contexts where the Oklahoma state courts had recently issued decisions in other cases that were directly on point with the constitutional claims raised by the habeas petitioners. . . .  In that context, we concluded that it would be pointless to require the habeas petitioners to exhaust their state remedies when it was clear what result would obtain") (citing  *Wallace v. Cody,* 951 F.2d 1170, 1171 (10th Cir.1991); *Goodwin v. Oklahoma,* 923 F.2d 156, 157 (10th Cir. 1991)); *see also, e.g., Lines v. Larkins,* 208 F.3d 153, 162 -163 (3rd Cir. 2000) ("Futility" exists where:  a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field, . . . the state provides no means of seeking the relief sought, . . . where the state courts have failed to alleviate obstacles to state review presented by circumstances such as the petitioner's pro se status, poor handwriting and illiteracy, . . if there is inordinate delay in state procedures, . . . if state officials have obstructed the petitioner's attempts to obtain state remedies") (internal quotations and citations omitted), *cert. denied,* 531 U.S. 1082 (2001).

[20]  *See Engle v. Isaac,* 456 U.S. 107, 130 (1982) ("We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause . . . .  If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim."); id. at n.36 ("the decision to withhold a known constitutional claim resembles the type of deliberate bypass condemned in *Fay* . . .  Since the cause-and-prejudice standard is more demanding than Fay 's deliberate bypass requirement, *see Sykes,* . . . we are confident that perceived futility alone cannot constitute cause."); *Coronado v. Ward,* 517 F.3d 1212, 1215 (10th Cir. 2008) ("Mr. Coronado's claim is not eligible for our consideration because he cannot show 'cause and prejudice' to excuse his default [under] *Coleman* . . .  Namely, Mr. Coronado's briefs before this court point to no evidence suggesting that 'some objective factor external to the defense impeded . . . [his] efforts to comply with the state procedural rules.'") (quoting *Murray,* 477 U.S. at 488); *Gilkey v. Kansas,* 58 Fed. App'x 819, 822 (10th Cir. 2003) ("Mr. Gilkey alleges his limited knowledge of the law is sufficient to show cause for his procedural default.  We disagree. Mr. Gilkey's 'lack of awareness and training on legal issues' does not constitute adequate cause for his failure to comply with Kansas' appellate filing rules.") (quoting *Rodriguez v. Maynard,* 948 F.2d 684, 688 (10th Cir. 1991)).

procedural default as announced in *Coleman*."  *Short v. Jones,* 246 Fed. App'x 586, 592 (10th Cir. 2007) (citing *Coleman,* 501 U.S. at 750).[21]

To satisfy the "fundamental miscarriage of justice" exception for a procedural default, "a criminal defendant must make a colorable showing of factual innocence." *Beavers v. Saffle,* 216 F.3d 918, 923 (10th Cir .2000).  Contrary to his assertions in Ground Two and Ground Five, metropolitan court is not limited to crimes that carry a sentence of less than ninety days, nor is a metropolitan court judge limited to imposing sentences, either individually or cumulatively, of ninety days or less.  Petitioner's prior sentences for animal violations may have left him with that impression, but that is not a limitation imposed by the statute authorizing the metropolitan courts or by the metropolitan court rules.  Indeed, the only consequence of a 90-day sentence that I have found is whether a jury is required for the criminal case.  *See supra,* notes 6-8 (and sentences noted therein); *supra,* Section II.B (and discussion of metropolitan court statutes and rules therein).

As in his overarching assertions and alluded to in Grounds Two and Four, Petitioner believes that allowing animals to have earmites is not criminal behavior.  His

---

[21]   "As for prejudice, a petitioner must show actual prejudice resulting from . . . the alleged constitutional violation." *Johnson v. Champion,* 288 F.3d 1215, 1227 (10th Cir. 2002) (internal quotations omitted) (citing *United States v. Frady,* 456 U.S. 152, 168 (1982), and *Wainwright,* 433 U.S. at 84).  The test is not well-defined except for the notion that the hurdle is a high one to clear.  *See, e.g., Murray,* 477 U.S. at 493-94 ("The showing of prejudice required under Wainwright v. Sykes is significantly greater than that necessary under the more vague inquiry suggested by the words 'plain error.' . . . The habeas petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.") (internal quotations and citations omitted).  Even though I need not discuss "actual prejudice," I would submit that the above discussion of the merits of his claims in connection with his failure to show "actual innocence" applies equally to the "actual prejudice" analysis.

focus exclusively on the earmites wholly ignores the abusive and neglectful conditions under which he housed the large number dogs in his van – the circumstances that gave rise to all of the other violations of the ordinance with which he was charged. Moreover, a jury could plainly find that an earmite condition violated the ordinance.  The "medical treatment" section of the HEART ordinance requires animal owners to provide "basic medical care and emergency medical care as defined by this article for all their animals."  HEART Ordinance, § 9-2-2-1(B)(1) (internal capitalization omitted for clarity). "Basic medical care" is defined as "including, but not limited to . . .  prompt Veterinary care when required [and] Basic Grooming."  "Basic Grooming" includes "[e]xamination, attention and acts reasonably necessary to maintain the . . . ears." *See id.,* § 9-2-1-4 (definition section).  The jurors were instructed that to find Petitioner guilty under Section 9-2-2-1(B)(1), they had to find that Petitioner guilty of the "Basic Animal Care," meaning they had to find that he "failed to treat ear infections and ear mite infestations of each dog." *Record Proper* at 395 (instruction for Counts 94-111); *id.* at 255-272 (guilty verdicts); *id.* at 161 (summary of jury verdicts, including 18 counts for medial treatment violations under § 9-2-2-1 (B)(1)); *id.* at 3 (sentence for 18 counts of "medical treatment" in violation of § 9-2-2-1 (B)(1)).

Petitioner's remaining claims are equally without merit and/or fail to establish factual innocence.  His suggestion in Ground Three that the defense was not involved in the selection of the jury is belied by the fact Petitioner was represented by counsel at trial, and the record shows the defense exercised peremptory challenges.  *See id.* at 76, 404.  His observation that Judge Altwies did not rule on his pretrial *pro se* motion to transfer his case "to an other court," *id.* at 78, ignores three things.  First, it ignores the

fact that the New Mexico metropolitan court, and not another state or court, was the court with jurisdiction over the criminal charges.  Second, it ignores the fact that he could have had a completely new trial in the district court, a process with which he was familiar from prior proceedings and he chose to do avoid.  Third, it ignores the strategy defense counsel pursued.  After Mr. Miller entered his appearance and attended a pretrial conference, he continued with, and did not withdraw, the *pro se* motion seeking suppression of the evidence and dismissal of the charges based on entrapment, prosecutorial vindictiveness, and selective enforcement.[22]

As I read Ground Four, Petitioner is challenging the pretrial evidentiary hearing where Judge Altwies heard the motion and, evidently, ultimately denied it.  *See Record Proper* at 76 (Judge Altwies' notes showing pretrial conference held and the parties requested a hearing on defendants motion to suppress; and that "motions heard and testimony heard" 8/13/07, and trial held "8-20-07 & 8-21-07").  Petitioner is either asserting that Judge Altwies limited the hearing testimony to that of the officers, or that she credited their testimony over the testimony of defense witnesses.  In either case, his factual innocence is not implicated by these grounds for habeas relief.  *See Byrns v. State of Utah,* 1998 WL 874865 at * 3 (10th Cir. 1998) ("the issue we decide here is whether . . . there is cause and prejudice to excuse petitioner's procedural default, or

---

[22]  *See Record Proper* at 46-65 (*pro se* motions including to suppress and dismiss based on entrapment, etc.); *id*. at 66 (initial order by Judge Altwies to hold hearing on motion to dismiss and a pretrial conference); *id*. at 78 (*pro se* motion for change of venue dated 7/12/07); *id*. at 76 (Judge Altwies notes showing at June 27, 2007 pretrial conference, the Public Defender informed court that case was assigned to Mr. Miller; that Mr. Miller entered his appearance at a July 17, 2007 pretrial conference and the parties requested a hearing on defendants motion to suppress; that "motions heard and testimony heard" 8/13/07, with parties to submit "Caselaw" within a few days;" and trial held "8-20-07 & 8-21-07"); *id*. at 94-140 (state response to motion to dismiss and case law dated 8/15/07).

whether barring his claims would result in a fundamental miscarriage of justice. . . .

Petitioner . . . puts forward substantive claims of entrapment, prosecutorial delay, and

*Brady* . . . the fundamental miscarriage of justice exception [is] inapplicable.  To come

within this exception one must make a proper showing of factual innocence."); *see also,*

*e.g., Bell v. Howes,* 2008 WL 4852716 at * 5 (E.D. Mich. 2008) ("Entrapment, however,

establishes only legal innocence, not factual innocence, and thus cannot establish

actual innocence sufficient to overcome the procedural bar to petitioner's application.").

Because petitioner fails to set forth a cognizable excuse his failure to exhaust, his

federal claims are procedural defaulted.  Because he likewise fails to show "cause and

prejudice" or a "colorable showing of factual innocence," the default is not excused.

Consequently, his federal petition should be dismissed.

## IV.  An Evidentiary Hearing Is Not Necessary

For all of the foregoing reasons, even although there is no recording of the trial

proceedings, I find that a federal evidentiary hearing is not necessary.  First, the lack of

a trial record is attributable to Petitioner's deliberate failure to pursue a *de novo* trial with

the state district court.  Under § 2254(e)(2), when a habeas petitioner " has failed to

develop the factual basis of a claim in State court proceedings," this Court is not

permitted to hold an evidentiary hearing unless the claims rely on either "a new rule of

constitutional law, made retroactive to cases on collateral review by the Supreme Court,

that was previously unavailable," or on a "factual predicate that could not have been

previously discovered through the exercise of due diligence."  28 U.S.C. §§

2254(e)(2)(A)(i)-(ii).  None of Petitioner's claims meet these criteria, much less that "the

facts underlying the claim would be sufficient to establish by clear and convincing

evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  *Id.,* § 2254(e)(2)(B).

Petitioner's lack of diligence in pursuing state remedies, failure to meet the statutory criteria, and the fact that the federal habeas issues can be resolved on the record, all preclude the necessity for an evidentiary hearing.  *See e.g., Williams v. Taylor,* 529 U.S. 420, 429-31 (2000); *Fairchild v. Workman,* 579 F.3d 1134, 1145-46 (10th Cir. 2009); *Sandoval v. Ulibarri,* 548 F.3d 902, 915 (10th Cir. 2008).

Wherefore,

**IT IS HEREBY ORDERED THAT** the Clerk substitute James Janecka of the Lea County Correctional Facility (LCCF) as the Warden Respondent.

**IT IS FURTHER HEREBY RECOMMENDED THAT** the § 2254 petition be dismissed with prejudice.

**IT IS FURTHER HEREBY NOTED** that objections to these proposed findings do not fall within the Court's filing restrictions and must be filed within the time limits noted below, *see Doc. 53* at 3 (filing restrictions not applicable to objections to these proposed findings or to "documents necessary to perfect an appeal").

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE